*The inhabitants of* CUMBERLAND, *plaintiffs in error vs.*
PRINCE, *admr.*

Where the legislature divided a town into two, and provided that all persons dwell-
ing on lands adjoining the division line should have liberty to belong, with their
lands, to either town, at their election, made within a limited time ;—it was
*held* that this election was not merely a personal privilege, terminating at the
death of the party ; but was a definitive and perpetual change of the line of ter-
ritorial jurisdiction.

THIS was a writ of error *coram vobis*, to reverse the judgment of
the court of Common Pleas in this county, in an action brought by
*Prince* as administrator of the estate of *Cushing Prince,* deceased,
to recover damages against the town of *Cumberland,* for the amount
of certain taxes illegally assessed.

It appeared that the original plaintiff's intestate was an inhabitant of
*North Yarmouth,* at the time it was divided, and the westerly part
incorporated into a separate town by the name of *Cumberland* ; his
farm adjoining the divisional line, and being within the limits of *Cum-
berland* as described in the act of division ; *Sp. Stat.* 1821, *ch.* 78.
The eighth section of that act was in these words ;—" That all per-
sons dwelling on lands adjoining the division line described in the
first section of this act, shall have liberty to belong, with their lands
adjoining said line, to which of said towns they may elect ; provided

they make such election in writing, describing such lands, and file the same in the office of the Secretary of State, within ninety days after the passing of this act. And one half the highway adjoining said division line, as the same shall be after such election made as aforesaid, shall belong to each of said towns." The plaintiff's intestate, under this provision, made his election to belong to *North Yarmouth*, in which town he enjoyed town-privileges, and paid taxes, during his life time. After his decease, the town of *Cumberland* taxed his real and personal estate, on the ground that the election, given by the eighth section of the act, was merely a personal privilege, ceasing with the life of the party; and that on his decease the line of territorial jurisdiction was the line described in the first section. And whether it was so or not, was the only question in the cause.

The court below decided that the line was definitively and forever settled by the election of the parties, once made, agreeably to the eighth section; and accordingly gave judgment for the plaintiff, against the legality of the tax. Whereupon *Cumberland* brought this writ of error.

*N. Emery*, for the plaintiffs in error, contended that where a permanent change of boundary was designed, the legislature had always designated the land as "farms;" or used some language denoting perpetuity; or specially described the land. But that in the absence of such language, and especially where only the persons are mentioned, the privilege was merely personal and for life. *Sp. Stat.* 1802, *ch.* 9, 37 ; 1803, *ch.* 16, 21, 38 ; *Dillingham v. Burgess*, 16 *Mass.* 58 ; *Attleborough v. Harwich*, 17 *Mass.* 398 ; 2 *Montesquieu Sp. Laws* 183, *b.* 26, *ch.* 20 ; *Year book*, 12 *H.* 7, 25.

*Eastman*, for the defendant in error, cited *Kingsbery v. Slack & al.* 8 *Mass.* 154 ; *Dillingham v. Burgess*, 16 *Mass.* 58.

MELLEN C. J. delivered the opinion of the Court at the adjournment in *August* following.

The opinion we have formed in this case renders it unnecessary for us to make any discrimination between that portion of the tax

which was assessed on the real estate of the intestate, and that which was assessed on the personal. We decide the cause upon the construction of the eighth section of the act incorporating the town of *Cumberland.* The first section distinctly describes the divisional line between that town and *North Yarmouth,* subject only to such variation as might be made in virtue of the eighth section. The language of that is to be carefully considered. The intestate, within ninety days, elected to belong to *North Yarmouth,* and filed his certificate with the Secretary of State accordingly ; and the only question is whether this election was merely personal, continuing him an inhabitant, and his lands a part, of the town of *North Yarmouth,* during his life only, or whether it constituted a permanent change of the division line, as described in the first section. And we are all of opinion that such line was permanently changed by such election, so far as that election extended. Several reasons have readily conducted us to this conclusion.

1. The language of the eighth section dictinctly indicates this. It provides that by the election which any adjoining owner of lands within the ninety days should make, he and his lands were to belong to the elected town, without any limitation of time. When once belonging to *North Yarmouth* by his election, the intestate could not, by his own act, dissolve his connexion with one town, and constitute himself an inhabitant, and his lands a part, of another town. Such an effect must be produced by an act of the legislature. If his death could have such an effect, for the same reason he might have made a second election, and return to *Cumberland.* But surely the legislature could never have intended such a succession of changes in the division line, as would be the consequence of adopting the construction of the town of *Cumberland.* The deaths of all the owners of lands adjoining the line described in the first section, might for half a century keep that line in fluctuation and uncertainty.

2. Unless permanency was intended, why should the privilege of election have been limited to ninety days ? And why should a certificate of such election, and a description of the lands of the person electing, have been required to be deposited in the Secretary's office, unless for the purpose of showing to all concerned the ultimate course

and position of the line, at the end of the ninety days, during which it was liable to alteration?

3. Again, unless a permanent line was to be established by the elections which might be made, why was this privilege of election confined to those whose lands adjoined the line described in the first section?

4. Again, one half of the highway adjoining the division line, as the same should be after such election, was to belong to each town; but how is it to be owned, and to which town does it belong, if such election is only personal and temporary?

The case of *Kingsbery v. Slack & al.* cited by defendant, was different from this. A single individual was annexed to another town, from considerations merely personal in their character, and there was no description of his estate. Both these circumstances were the professed grounds of the decision. The argument of the counsel founded on the words " forever belong," " forever after," " they and their successors," &c. used in several acts of incorporation or annexation, seems to have little weight. In the act in question, the word " belong" is used, and without limitation ; and in such case it seems to mean as much as though the word " forever" was connected with it. The case of *Dillingham v. Burgess* bears no resemblance to the present. The language of the act in that case will admit of no other construction than that which was given. Personal convenience, and a spirit of accommodation, dictated the provision. We perceive no error in the record and proceedings before us.

*Judgment affirmed, with costs for the defendant in error.*