PAUL N. DWYER, PETITIONER
*vs.*
STATE OF MAINE

Oxford.   Opinion, January 17, 1956.

*Verrill, Dana, Walker,*
*Philbrick & Whitehouse,* for plaintiff.

*Frank F. Harding, Atty. Gen.,*
*Roger A. Putnam, Asst. Atty. Gen.,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, CLARKE, JJ.

FELLOWS, C. J.   This is a petition filed at the November term, 1955, of the Superior Court for Oxford County, asking that a writ of error *coram nobis* issue; that a hearing be had on the writ, and that the petitioner's plea of guilty to an indictment for murder, made at the November term, 1937, of said Superior Court, be stricken from the record. Questions of law having arisen as to whether the court has the jurisdiction to hear such a petition, and to issue the writ of error *coram nobis* thereon, and the parties agreeing thereto, the presiding justice ordered the case reported to

the Law Court for decision. The order of the presiding justice states that "if the Law Court is of the opinion that this court has the jurisdiction to entertain this petition, this matter to stand for hearing on the petition," and if the court does not have jurisdiction, the petition to be dismissed.

The claims of the petitioner, Paul N. Dwyer, as alleged in this petition for the writ of error *coram nobis*, are "that your petitioner was indicted by the Grand Jury of the County of Oxford on November 5, 1937 for the murder of one Dr. Littlefield; that after a plea of not guilty had been entered by your petitioner and a jury trial had been commenced, your petitioner, under conditions hereinafter related, changed his plea to guilty; that the plea of guilty to murder was accepted by the court; that he was subsequently sentenced on December 2, 1937 to the State Prison at Thomaston for a life sentence; that your petitioner has for the eighteen years since said date, and currently is, serving this sentence at said prison."

"That your petitioner was coerced into making a plea of guilty by duress and threats of violence by one Francis M. Carroll, an official of the State of Maine, viz., a Deputy Sheriff of Oxford County duly appointed according to law, subsequently convicted by a jury of his peers for the crime to which your petitioner pleaded guilty."

"The duress involved was the culmination of a long series of events which effectively deprived your petitioner, then a minor of seventeen years of age, of independent action when he felt himself under the immediate control of the said Francis M. Carroll."

"The period preceding the actual murder of Dr. Littlefield was marked by several instances where Francis M. Carroll imposed his will upon your petitioner. In the winter of 1936 the said Carroll with threats of physical violence

and by other intimidations coerced your petitioner into typing certain threatening letters to one George R. Morton, president of a manufacturing concern in South Paris, Maine for the purpose of frightening the said Morton into hiring Francis Carroll for a guard's position."

"Again on October 7, 1937 the said Carroll threatened to 'ruin' your petitioner and his mother unless certain letters incriminating Francis M. Carroll of the crime of incest in the possession of your petitioner were relinquished to Carroll."

"Your petitioner states that the dominance over him by Francis M. Carroll was heightened by the threats of Carroll to destroy the romance between your petitioner and Barbara Carroll, and by the emotional shock of witnessing the murders of Dr. and Mrs. Littlefield."

"During the period between the murder of Dr. Littlefield and the arrest of your petitioner, there were many direct threats to the lives of your petitioner and his mother by Francis Carroll. Your petitioner believed and was reasonable in believing that Carroll was able to, and intended to, carry out his threats against your petitioner and those dear to him."

"After your petitioner's arrest he made efforts to keep from being returned to the custody of the said Carroll by deliberately confessing to crimes which he did not commit in order to place the crimes in jurisdictions other than Oxford County."

Your petitioner alleges that the effect of the combined threats, intimidations, influences, etc., resulting in the following events, such as causing him in the winter of 1936 to type the threatening "Morton" letters; causing him to betray confidences; on October 10, 1937, forcing the surrender of incriminating evidence of Carroll's criminal acts upon

his children; on October 15, 1937, causing the making of false statements in New Jersey and New Gloucester; on October 17, 1937, forcing him to utter the false story of robbers and narcotics rings at Augusta State Hospital; forcing him to recant his assertions to his attorney, Abbott; finally culminated on December 1, 1937 in the forcing from your petitioner a plea of guilty to a crime which your petitioner did not commit and of which he is entirely innocent."

"Wherefore your petitioner prays; that a writ of *coram nobis* issue; that this matter be set for hearing before this Honorable Court as soon as feasible; that the Warden of the State Prison at Thomaston, Maine be ordered to deliver your petitioner at the time and place set for such hearing so that he may be present and testify thereat; and that the aforesaid plea of guilty be stricken from the records of this case and that he be discharged."

The above petition for the writ of error *coram nobis* was signed by the petitioner on September 13, 1955, and his affidavit then taken before a Notary Public.

The petitioner, who has been in prison seventeen years under a life sentence, imposed after his plea of guilty to an indictment for the murder of Dr. Littlefield, seeks to have his plea adjudged void for duress under the common law writ of error *coram nobis*. The petition discloses the grounds on which the writ is sought. In brief, the petitioner contends that the then deputy sheriff most closely connected with petitioner's surveillance prior to his trial for murder, one Francis Carroll, who was later himself convicted of the same murder by a jury, caused petitioner, although innocent, to plead guilty to avoid harm to himself and his mother.

The error sought to be attacked by the proposed use of the writ is an error of fact, or mixed fact and law, not

known and not appearing at the time of trial, and thus not one of record. Although the writ has sometimes been applied for in criminal cases in the Superior Court of Maine, and the writ of *coram nobis* has issued, the question as to whether or not the remedy still exists in Maine has not been directly decided.

The issues in this case are whether or not the ancient remedy of writ of error *coram nobis* is available to a petitioner who wishes to attack a criminal judgment for errors not known or not appearing at the time, and not apparent of record, which if known would have prevented the judgment, and whether the writ should issue on the petition.

Is the writ of error *coram nobis* a proper procedural remedy for this petitioner, in order to raise in the Courts of this State the question as to deprivation of his constitutional rights, both State and Federal, before, at, and during his trial?

The status of the law on this particular issue is in doubt, and this is the first time that this issue has been clearly presented to the Law Court for determination.

Since the recent advent of Federal review of State criminal proceedings in Maine, the State's position has been (according to the State's brief) that a prisoner in a State penal institution has not exhausted his State remedies until he has asked for a writ of error *coram nobis*. It is the State's position that the prisoner does not necessarily exhaust his State remedies by resorting to habeas corpus.

Habeas corpus was the remedy pursued in this State by one Green (see *Green* v. *Robbins,* 120 Fed. Supp., 61, affirmed in *Robbins* v. *Green,* 218 Fed. (2nd) 192) and is the remedy which is repeatedly used by prisoners. Generally speaking, the writ of habeas corpus will lie to test jurisdiction. It is jurisdiction of two things, (1) of the crime, viz.:

Did the court that tried this case acquire jurisdiction of the crime and does it have jurisdiction over the crime? (2) of the person, viz.: Did the court have jurisdiction of the accused? If these two questions are answered in the affirmative, then the court has the right and duty in habeas corpus to remand the prisoner in execution of his sentence. See *Wallace* v. *White,* 115 Me. 513. It was long ago settled that persons imprisoned on criminal process are not to be released on habeas corpus for defects in matters of form only. The writ of habeas corpus cannot be used as a substitute for a plea in abatement, or a motion to quash. Nor can it be substituted for an appeal. A writ of error may be the proper remedy. An application for the writ of habeas corpus is addressed to the sound discretion of the court; and the writ will not be granted unless the real and substantial justice of the case demands it. *O'Malia* v. *Wentworth,* 65 Me. 129, 132.

As a technical proposition, habeas corpus, dismissed after hearing, is not *res adjudicata* (*Turgeon* v. *Bean,* 109 Me. 189), but as a *practical* proposition it does so operate. After one judge has dismissed a petition, or dismissed the writ, and the same petitioner files the same or similar petition to the same or another judge, the first decision (if known by the presiding justice) will generally be followed and dismissal ordered. Dismissal of the writ of habeas corpus has also been properly ordered by a judge in habeas corpus proceedings, when a writ of error was more suitable.

The U. S. Supreme Court has pointed out many times that there should be a post conviction procedure within the various states which will be broad enough to cover all deprivations of constitutional rights under the Federal Constitution, and it is well to note that a writ of error *coram nobis* has been accepted by the U. S. Supreme Court as an appropriate post conviction remedy. *Hysler* v. *Florida,* 315 U. S. 411, 62 S. Ct., 688, 86 L. Ed., 932.

*Coram nobis*—from the Latin *quae coram nobis resident* (which remain with us), so called from the writ being founded on the record and process which are stated in the writ to remain in the court of the king (with us). Tidd's Pr. 2, 1136. See *Fugate* v. *State*, 85 Miss. 94, 37 So. 554, 107 Am. St. Rep. 268, 3 Ann. Cas. 326 for the history of the writ and its use. See also *Sanders* v. *State*, 85 Ind. 318, 44 American Reports, 29 (duress), *Collins* v. *State*, 66 Kan. 201, 97 American State Rep. 361 and note.

Such a writ, therefore, as to form, differs from an ordinary writ of error in two particulars (1) it contains no certiorari clause, for there is no record to be certified, and (2) it has no return day, as it is in the nature of a commission to the trial court to correct error. It also differs in substance from an ordinary writ of error in that it is not issued to correct errors of *law* but errors of *fact* in respect to matters which affect the validity and regularity of the proceedings. Its object is not to correct errors that have arisen through any fault of the court, but to correct the record in matters of fact existing at the time of the pronouncement of the judgment, in respect of which the court was unadvised, whereas, had it been advised, the judgment would not have been pronounced. Standard Encyclopedia of Procedure, Vol. 26, page 601-602; *Collins* v. *State*, 66 Kan. 201, 71 Pac. 251 and long note to this case as reported in 97 Am. State Rep. 362. For forms of writs of error *coram nobis* as used in other jurisdictions, see Ency. of Forms, Vol. 7, page 711, Standard Ency. of Procedure, Vol. 9 "Forms," page 1294. For form of writ of error and pleadings in Maine (under the statute) see *Galeo, Plaintiff in Error* v. *State*, 107 Me. 474, 476.

As Eli Frank points out in his recent book on *coram nobis* (Common Law—Federal—Statutory 1953) the writ was devised to provide a remedy to seek redress for an error in fact unknown at the time of trial. Frank speaks of the writ

as a "long quiescent remedy, admirably adapted to fulfill a role in keeping with the multitudinous decisions handed down by the Supreme Court in the past twenty years in which due process has been affirmed and expanded as one of the bulwarks of American liberty."

There was a slight distinction between *coram nobis* and *coram vobis* at common law. Originating in the sixteenth century, *coram nobis* was a vehicle for reversing a judgment in King's Bench, where the record remained, whereas *coram vobis* was used to correct an error in another court by ordering that court to send the record and process to King's Bench for examination and judgment. See *Atkinson v. People's National Bank of Waterville*, 85 Me. 368 (1893); Standard Ency. of Procedure, "Writs of Error," Vol. 26, page 601 and cases there cited; Frank on Coram Nobis, pages 1-4.

The statutory writs of error, frequently used in civil and criminal cases in Maine, are provided for in Revised Statutes (1954), Chapter 129. The material portions of Sections 11 and 12 are as follows:

Sec. 11

"No writ of error upon a judgment for an offense punishable by imprisonment for life shall issue, unless allowed by a justice of the supreme judicial court or of the superior court after notice to the attorney general or other attorney for the state."

Sec. 12

"Writs of error shall issue of course upon all other judgments in criminal cases, and applications for the same shall be made to the supreme judicial court or to the superior court in the county where the restraint exists, if in session; if not in session, to a justice of either of said courts. Such court or such justice thereof in vacation, may make such order as the case requires

for the custody of the plaintiff in error or for letting him to bail; and when issued by the court, it shall be returnable thereto; but when issued by a justice thereof in vacation, it may be returnable before a justice of said court and be heard and determined by him, or returnable to said court; or upon a writ of habeas corpus, if entitled thereto, he may procure his discharge by giving bail."

These two sections of the statute, when this statute has been invoked, have been construed to apply to those errors that appear upon the face of the record. *Nissenbaum* v. *State*, 135 Me. 393; *Smith, Petr.*, 142 Me. 1; *Jenness* v. *State*, 144 Me. 40; *Kaye* v. *State*, 145 Me. 103; *Smith* v. *State*, 145 Me. 313; *Mullen, Petr.*, 146 Me. 191; *Ingerson* v. *State*, 146 Me. 412. In the foregoing cases, the writ of error *coram nobis* was not petitioned for. The writ of error asked for was the statutory writ of error.

Revised Statutes 1954, Chapter 129, Section 9, however, provides as follows: "The proceedings upon writs of error, not herein provided for, shall be according to the common law as modified by the practice and usage in the state and the general rules of court." The fact that this Section 9 has been placed, by the revisors of the statutes, with certain other sections relating to civil cases, renders it no less effective in criminal cases. It is not restricted by its terms, and is applicable to cases civil or criminal.

A divorce case where a writ of error was brought, which contained factual allegation of insanity outside the record, is *Preston* v. *Reed*, 141 Me. 386. The court held that divorce was not "a civil action" and suggested that the remedy should be a petition for annulment. The court say relative to writs of error: "The course of the common law as to writs of error does not appear to have been changed by practice or usage in the state, or by any of the general rules of court."

A writ of error *coram nobis* was originally, and now is, a part of the procedural law of Maine. Article X, Section 3 of the Constitution of Maine states: "All laws now in force in this state, and not repugnant to this constitution, shall remain, and be in force, until altered or repealed by the legislature, or shall expire by their own limitation."

In 1820, when Maine became a state, this article in the Constitution of Maine effectively incorporated all "laws" then in force. Whether the word "law" refers to Massachusetts law or to the common law is immaterial, for by either standard a writ of error *coram nobis* was then recognized as a remedy. *Coram nobis* was recognized by Massachusetts courts until the Massachusetts writ of error statute was passed in 1836, and since that time Massachusetts' cases reflect the opinion that there is no writ in Massachusetts other than those prescribed by statute. See *Com.* v. *Sacco,* 261 Mass. 12, 158 N. E. 167; *Com.* v. *Phelan,* 271 Mass. 21, 171 N. E. 53.

Article 1, Section 6 of the Maine Constitution, however, guarantees a person against deprivation of life, liberty, property or privileges, except by "judgment of his peers or the law of the land." The later phrase, it has often been recognized, incorporates the process and proceedings of the common law. *State* v. *Learned,* 47 Me. 426, 432; *Saco* v. *Wentworth,* 37 Me. 165, 171.

The writ of error *coram nobis* is found in many early Maine cases which recognize this writ. See *Jewett* v. *Hodgdon,* 2 Me. 335 (1823); *Towle* v. *Marrett,* 3 Me. 22 (1824); *Robbins* v. *Bacon,* 3 Me. 346 (1825); *Inhabitants of Cumberland* v. *Prince,* 6 Me. 408 (1830); *King* v. *Robinson,* 33 Me. 114; *Denison* v. *Portland Co.,* 60 Me. 519, 522.

There is no statute that prohibits, limits, or prevents the use of the writ of error *coram nobis*. We find no case in Maine, and no case has been called to our attention, where

the writ of error *coram nobis* has been petitioned for in Maine and has been denied on the ground that its use is not authorized by law. In fact, we know that writs of error *coram nobis* have been occasionally issued in the Superior Court in recent years, because of decisions in the U. S. Supreme Court, except the case at bar, no case has come before this court as a Law Court for decision. An examination of the recent cases in Maine, involving writs of error, show that they were writs of error brought under the statute, and the common law writ of error *coram nobis* was not asked for.

We hold, therefore, that a writ of error *coram nobis* may be petitioned for in the Superior Court in the county where conviction was had, or judgment rendered, in the case, and where the record is. If the petition is in proper form and the petition shows on its face a valid cause (when or if proved by the petitioner at a hearing on the writ), the court should order the writ of error *coram nobis* to issue and hearing should be had thereon. See (Certiorari) *Brooks* v. *Clifford*, 144 Me. 370; (Mandamus) *Hamlin* v. *Higgins*, 102 Me. 510.

Under the common law the petition for writ of error *coram nobis* was directed to the judge who presided at the original trial, if he was then in office. The petition should now be directed to the Superior Court, if the judgment was rendered in the Superior Court, because the hearing on the writ of error *coram nobis* must be held in the county where the record is. It is a part of the original case, and a part of the record. The prisoner in the criminal case is then in court where he was tried and convicted, and the court, if it grants the relief claimed, has by the petitioner's own action reacquired jurisdiction for correction of any error, or for a new trial on the original indictment or complaint.

A further reason for holding that application for the writ of error *coram nobis* should be directed to the Superior Court, is that Revised Statutes, Chapter 148, Section 32 gives authority to a Justice of the Supreme Judicial Court only to remand for error in *sentence*. A judgment in writ of error *coram nobis* might not be in sentence but in the adjudication. There is no statutory authority at present to remand from one court to the Superior Court except for error in sentence. At common law there is no authority to remand to another court. *Shepherd* v. *Com.*, 2 Met. (Mass.), 419. Therefore, a Justice of the Supreme Judicial Court, under the existing statute, should not be asked to act.

The constitutional rights of the individual are our most cherished and most important possessions. The rights of an American citizen, and all those who dwell with us, are guaranteed by Federal and State Constitutions. They are what we live by and what we must continually fight for. "Life, liberty and the pursuit of happiness" depend entirely on the recognition and maintenance of these rights. The Constitution of Maine demands that "every person for an injury done him in his person, reputation, property or immunities, shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely and without denial, promptly and without delay." Article I, Section 19, Constitution of Maine. Maine and its people always endeavor to do exact justice under and according to the Constitution and the common and statutory law.

Our Creator was wise in not permitting one person to read the mind of another. Such power would undoubtedly be of invaluable assistance in obtaining the truth, but it would often have unpleasant consequences. We humans must depend on what a man says and what he has apparently done to approximate his knowledge and intent. Then too, reliable witnesses are not always present when a crime is committed. The constitutional ideals of "right and jus-

tice" are, as a result, perhaps impossible to obtain in some instances.

There is usually a legal vehicle in Maine for the individual to seek justice if, or when, he feels that injustice has been "done him in his person, reputation, property or immunities," even though laws may be imperfect and human enforcement difficult. Maine takes pride in attempting to carry out the old maxim that "for every wrong there is a remedy." So in the case at bar, this petitioner has legal opportunity to establish his constitutional rights, if it appears that he has been unjustly deprived of them.

This case presents an unusual feature in that the parties do not disagree. The counsel for petitioner says that the common law writ of error *coram nobis* has not been abolished in Maine, nor has its use been curtailed by statute or decision. To this statement the Attorney General agrees, and says that its use is necessary in order to have it as a post conviction remedy, where constitutional rights may have been violated through facts unknown at the time of conviction.

This court decides that the Superior Court of Maine has jurisdiction to entertain this petition for a writ of error *coram nobis* and to order the writ to issue. When the petition for writ of error *coram nobis* is in proper form and on its face states facts that show a right to the writ, for good and sufficient cause, a justice is authorized to order the writ to issue.

When a writ of error *coram nobis* is issued, it should contain allegation of the errors of fact alleged in the petition. At the hearing on the writ of error *coram nobis* the petitioner must show (1) the existing record and (2) prove the duress, or other valid fact alleged, that shows deprivation of constitutional rights. The proceeding, on the writ, is not to revise a decision made by the court or jury. It is

not an appeal, or a motion for a new trial or newly discovered evidence, or a claim that the original record is false. The proceeding is for the purpose of presenting facts which, if known at the time of trial, would have prevented the judgment from being rendered. The record of the case in which judgment was pronounced is not to be contradicted, the error must be consistent with it. The matter involved in the original trial is not open on writ of error *coram nobis,* but only the questions presented relating to alleged errors of fact, which fact if known at the time of trial would have prevented the judgment from being made.

The decision on the writ of error *coram nobis* is to the effect that the judgment complained of be affirmed or recalled, according as it may be for the state or the petitioner. If the decision is for the petitioner, then the case is placed in the same situation as it was before the judgment was entered. See *Collins* v. *State* (Kan.) reported in 97 American State Reports and extensive note, with many cases cited, re a petition for writ of error *coram nobis,* and the pleading and practice.

Whether the writ of error *coram nobis* should issue on the petition is a question of law. Whether the existing record should be changed is a question of fact to be proved at the hearing on the writ. The petitioner, at the hearing on a writ of error *coram nobis,* is not presumed innocent. The petitioner must, therefore, prove the truth of his allegations to the satisfaction of the presiding justice by a preponderance of evidence.

*Case remanded to Superior Court for action on pending petition for writ of error coram nobis.*