**John D. DUNCAN, Petitioner, Appellant,**

v.

**STATE OF MAINE et al., Respondents, Appellees.**

**No. 5859.**

United States Court of Appeals
First Circuit.

Nov. 2, 1961.

John D. Duncan, pro se, on brief.

Frank E. Hancock, Atty. Gen., Maine, Richard A. Foley, Asst. Atty. Gen., Maine, and Peter Mills, U. S. Atty., Portland, Me., on brief, for appellees.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

This is an appeal *in forma pauperis* on certificate of probable cause from an order of the United States District Court

for the District of Maine dismissing an application for a writ of *habeas corpus ad subjiciendum* for lack of jurisdiction and from a subsequent order of the same court dismissing an application for a writ of *habeas corpus ad testificandum.*

The petitioner, John D. Duncan, was sentenced to hard labor in the Maine State Prison for not less than two nor more than four years at the September, 1955, Term of the Superior Court for the County of Cumberland and State of Maine following his conviction for breaking, entering and larceny in the nighttime. While serving that sentence he was convicted at the October, 1956, Term of the Superior Court for the County of Knox for attempting to escape from the Maine State Prison and sentenced to not less than eight nor more than sixteen years to be served upon the expiration of the sentence he was then serving for breaking, entering and larceny. Subsequently Duncan was turned over to federal authorities under a contract between the Attorney General of the United States and the Commissioner of Institutional Service of the State of Maine entered into pursuant to Title 18 U.S.C. § 5003 and Sec. 32–A of Chapter 27 Maine Revised Statutes 1954, as amended. He was first assigned to the United States Penitentiary at Atlanta, Georgia, but later transferred to the United States Penitentiary at Alcatraz, California, where he is now confined.

Duncan applied for *habeas corpus* to the United States District Court for the Northern District of California, Southern Division, on the grounds that § 5003, supra, by its terms applies only to youthful offenders and that in any event it is void and unconstitutional. His application for the writ was denied on the merits by the District Court and on appeal its decision was affirmed. Duncan v. Madigan, 9 Cir., 1960, 278 F.2d 695, certiorari denied 1960, 366 U.S. 919, 81 S.Ct. 1096, 6 L.Ed.2d 242 rehearing denied, 1961, 366 U.S. 947, 81 S.Ct. 1675, 6 L.Ed.

2d 858. Duncan's next move was to apply for *habeas corpus* to a Justice of the Supreme Judicial Court for the State of Maine,[1] who denied his application on the merits, and then on April 17, 1961, he filed the instant petition for *habeas corpus* in the United States District Court for the District of Maine.

Duncan alleges a number of grounds in his application to the court below, some legal and others factual, such as that at his trial for attempted escape he was denied effective assistance of counsel, that he was not present at all stages of his trial, that before sentence was passed he was not permitted to speak in his own behalf and that during the trial he was so under the influence of drugs administered to him by prison authorities that he was unable to comprehend the nature of the proceedings or to conduct his defense. The court below, citing Ahrens v. Clark, 1948, 335 U.S. 188, 68 S.Ct. 1443, 92 L. Ed. 1898, denied Duncan's application for lack of jurisdiction because he was confined outside the territorial limits of the District of Maine.

It is not entirely clear that Duncan has exhausted the remedies available to him in the courts of the State of Maine as required by § 2254 of Title 28 U.S.C. However, since we are not aware of any change in the law of that state whereby one without funds may now obtain review in cases like this by the highest state court, we hold in conformity with our previous decisions, Robbins v. Green, 1 Cir., 1954, 218 F.2d 192, 195, and cases cited, see also Humes v. Robbins, D.C.Me. 1954, 121 F.Supp. 552, and Tuttle v. Robbins, D.C.Me.1959, 172 F.Supp. 394, that Duncan's poverty constitutes a circumstance rendering state process ineffective fully to protect his rights. Moreover it would seem from Dwyer v. State, 1956, 151 Me. 382, 120 A.2d 276, and Pike v. State, 1956, 152 Me. 78, 123 A.2d 774, that the remedy available to Duncan in Maine is not *habeas corpus* but *coram nobis.* However, since the Justice of the

---

1. The Maine statute cited above provides: "Nothing herein contained shall deprive such prisoner of his rights to parole or his rights to legal process in the courts of this state."

Supreme Judicial Court of the State of Maine did not summarily dismiss Duncan's petition for *habeas corpus* but decided it on the merits, we must assume that the remedy afforded by that writ is still available to one in his situation. Giving Duncan the benefit of the doubt we conclude that he has exhausted the corrective processes of the State of Maine to the extent that they are available to him.

■ This brings us face to face with the question whether a district court has jurisdiction to entertain a petition for *habeas corpus* by one originally held in custody in the district pursuant to the judgment of a state court but who at the time of application for the writ is being held outside the court's territorial jurisdiction by federal authorities acting under a contract entered into pursuant to Title 18 U.S.C. § 5003 and implementing state legislation.

■ Ahrens v. Clark, 1948, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898, upon which the court below relied, is not squarely in point. In the first place it was decided almost four years before § 5003 was enacted into law. In the second place the petitioners in that case were not being held in custody pursuant to the judgment of a State court. When they filed applications for *habeas corpus* in the District Court for the District of Columbia they were being held in New York by direction of the Attorney General for deportation to Germany. Nevertheless, we think the decision in that case rules the case at bar, for in it the Court held categorically on the basis of presumed congressional policy supported by legislative history that the words "within their respective jurisdictions" as used in 28 U.S.C. § 452 (1946 Ed.), the predecessor statute to § 2241(a) of Title 28 U.S. C., strictly limited the jurisdiction of the district courts to inquiries into the causes of restraints of liberty of those confined or restrained within their respective territorial jurisdictions. Taking the view that, at least insofar as prisoners held within the territorial jurisdiction of some federal court are concerned, the place of physical custody was the exclusive jurisdictional criterion, the Court said that in its view it was not sufficient that the jailer or custodian alone be found in the jurisdiction, and that it did " * * * not feel free to weigh the policy considerations which are advanced for giving * * * discretion in cases like this. If that concept is to be imported into this statute, Congress must do so." Ahrens v. Clark, supra, 335 U.S. at pages 192–193, 68 S.Ct. at pages 1445.

It can hardly be said that when Congress enacted Title 28 of the United States Code entitled Judicial Code and Judiciary which was approved by the President on June 25, 1948, it must have intended the words "within their respective jurisdictions" as used in its § 2241 to mean what the Supreme Court only four days before in Ahrens v. Clark said the same words meant in § 452 of the earlier statute. But the fact remains that since 1948 Congress has not seen fit to change the words, and we cannot assume that during the intervening years the phrase has somehow acquired a different meaning than that attributed to it by the Supreme Court in Ahrens v. Clark.

■ The District Court was quite correct in dismissing Duncan's application for *habeas corpus ad testificandum* on the ground that there was no proceeding pending in court in which Duncan could testify. Moreover, as the court below said, to suggest that a Court might issue the writ before any action could properly be brought so that it could gain personal jurisdiction over the applicant so that he could properly bring action is ingenious but without merit, for by such "bootstrap device" a federal court could acquire personal jurisdiction over any prisoner anywhere in the United States, Ahrens v. Clark to the contrary notwithstanding.

Judgment will be entered affirming the orders of the District Court.