STATE OF MAINE
*vs.*
CLAYTON BROOKS HALE

Waldo. Opinion, July 13, 1961.

362

 

*Richard W. Glass,* for plaintiff.

*Harold J. Rubin,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

WEBBER, J. The respondent was tried by a jury and convicted of the offense of "indecent liberties" with the person of a fourteen year old boy in Waldo County. His exceptions to certain rulings of the presiding justice raise issues to be determined here.

Before considering the exceptions, we must dispose of one other contention not technically before us. Respondent has addressed a motion for a new trial directly to the Law Court. No such motion was addressed to the presiding justice. It is well understood that prior to 1959, the review of criminal cases by the Law Court was by exceptions and, in felony cases, by appeal from the denial of a motion for a new trial seasonably addressed to the presiding justice. *State* v. *Bobb,* 138 Me. 242. As of December 1, 1959 the present rules of civil procedure became effective and in an effort to bring the statutes into reconciliation with these rules, the Legislature in 1959 enacted numerous amendments to existing statutes. These amendments are found in P. L., 1959, Chap. 317. Sec. 69 of that chapter, dealing

with the jurisdiction of the Law Court, included with other changes the insertion of the word "criminal" before the phrase "cases in which there are motions for new trials upon evidence reported by the justice." We are satisfied that this amendment which on its face created a remedy in criminal cases not available prior thereto was inadvertent and unintended by the Legislature. Our close relationship with the Legislature in attempting to create consistency between statutes and procedural rules promulgated by the court makes it possible for us to hold unequivocably that no change in the review of criminal cases was contemplated or intended. We are satisfied that the Legislature had in mind motions for new trial directed to the presiding justice and appeal therefrom as provided by R. S., Chap. 148, Sec. 30. We conclude that the methods of review available in criminal cases prior to the enactment of P. L., 1959, Chap. 317, Sec. 69 remain unchanged.

In view of the possibility of confusion resulting from the amendment, we have carefully examined the record in order to ascertain whether any injustice has resulted to the respondent from the employment of a technically insufficient vehicle of review. In the first instance, counsel for the respondent readily admits, and our examination confirms, that there is ample evidence which, if believed, would support a verdict adverse to the respondent. Counsel contends, however, that the jury was subjected to improper pressure to return a verdict in that they retired at 2:45 P. M. to begin their deliberations and returned a verdict at 2:35 A. M. No motion for a mistrial was made in connection with this issue. Although, as already noted, the matter is not technically before us, we have scrutinized the record to ascertain whether or not any injustice has resulted from the failure of the respondent to follow the proper avenues for review. It is apparent that there was no abuse of discretion on the part of the presiding justice. The trial lasted throughout five full days and ended on the sixth day.

Witnesses were brought from other states. The presiding justice was quite justified in giving consideration to the hardship and expense of a retrial both for the state and the respondent. At no time did the jury ask to be discharged from the case or suggest that it was hopelessly deadlocked. On the contrary, it is obvious that the jury was engaged in examining and appraising the evidence until it finally reported. Significant is the fact that at 2:15 A. M. the jury returned to the court room and requested the reading of portions of the evidence by the reporter. Within twenty minutes thereafter, the jury arrived at an unanimous verdict. We find here not the slightest suggestion that the verdict was the product of anything but the calm, deliberate and careful consideration by the jury. If the issue had been properly tendered, we could not have held otherwise.

The first of the two issues actually before us for consideration arises from an exception to the denial of a motion for a change of venue. The facts are not in dispute. A little more than a month before the trial and following the arrest and arraignment of the respondent, a weekly newspaper published in Belfast and having some circulation in Waldo County published an account of the proceedings. In the course of the article, otherwise factually true, there was included this statement: "Authorities allege they have a signed confession, he (the respondent) made at the time." It is agreed (1) that the statement was untrue, and (2) that none of the "authorities" charged with the investigation and prosecution of this case had made or authorized any such statement. This was at once a source of concern both to the county attorney and to the counsel for respondent. The latter immediately wrote to the county attorney but his primary interest was to learn whether or not such a written confession existed. The county attorney was dismayed by the falsity of the statement attributed to the "authorities." He interviewed the editor and informed

him that the statement was erroneous. The editor at once stated that a retraction would be published. He was aware, however, that the respondent had made some sort of confession and the county attorney in the course of the conversation confirmed the fact that an oral confession had been obtained. The editor then of his own volition published a retraction of the previous article as it related to a written confession but added the following: "Glass (the county attorney) alleged, however, that an oral confession was made to State Police and county law enforcement officers in Augusta by the Rev. Hale."

This statement at least has the virtue of being the truth and finds ample support in the evidence. Counsel for respondent takes the interesting position that the first and admittedly false statement did not justify a change of venue, but the later story, subsequently demonstrated to be true, was so prejudicial as to compel the relocation of the trial in another county.

News media are fully protected in their right to report the facts of any case as they occur. Difficulty arises, however, whenever there is a publication of what amounts to surmise and conjecture as to what may be offered and admitted as legal evidence at a later trial. We deplore, as do all courts, the giving of statements for publication in advance of trial by public officials as to the nature of what they deem to be evidence in their hands. We have in mind especially the disclosure by prosecuting officials of alleged confessions and admissions which may or may not ultimately pass the rigorous test of admissibility. Any incident which involves what is often termed "trying the case in the newspaper" or other news media imposes a great and unnecessary burden on courts which are charged with the duty of providing an atmosphere in which a respondent may receive a fair and impartial trial.

Unfortunate as we may deem such incidents to be, we cannot grant that there arises any conclusive presumption of prejudice from such published statements or that there must automatically be a change of venue whenever there is such an occurrence. The law in this respect is wise and realistic. It requires that actual prejudice be shown and leaves decision to the sound discretion of the presiding justice. *State* v. *Bobb, supra.* In the case before us the learned justice below took all of the usual precautions to eliminate the possibility of prejudice. Counsel upon their argument agreed that there was full and complete examination of each member of the jury and no person subsequently empaneled evidenced any prejudice or hostility whatever toward the respondent. There is no suggestion of spectator hostility in the court room or any public demonstrations anywhere before, during or after the trial. That no prejudice against the respondent found its way into the jury room seems to be further evidenced by the fact that in the face of very strong evidence of guilt, the jury deliberated for twelve hours before returning a verdict. We must conclude that there was not a scintilla of evidence of prejudice in this case and therefore no abuse of discretion on the part of the presiding justice. See *Commonwealth* v. *Geagan* (1959—Brink's Robbery), 339 Mass. 487, 159 N. E. (2nd) 870, 881.

We turn now to consideration of the respondent's exception to the denial by the justice below of a motion to quash the indictment. This motion was predicated on respondent's contention that he had been denied a "speedy trial." On the evidence before him, the justice could properly find that on September 11, 1958 the respondent at Augusta in the office of the State Police Department and in the presence of several witnesses made an oral confession of his guilt; that on that occasion he was advised by the county attorney that he would be arraigned on the following morning; that he was not then placed under arrest but was permitted to

return to his home in Belfast; that on the same evening he was advised by his own attorney that he would be arraigned in Belfast the following morning; that he was further informed by his then counsel that although he could not advise his client to flee, it was his opinion that the authorities probably would not pursue the client if he left the state and stayed away; that the respondent left Maine some time during the night; that a secret indictment was returned by the grand jury against the respondent at the October term of court, 1958 and a capias issued at that and each subsequent term of court; that the respondent was thereafter in California, Hawaii and other places outside of Maine until he returned to Belfast for about two and one-half days in February, 1960; that on April 22, 1960 the respondent was arrested in Boston, Massachusetts, and returned to Maine where he was arraigned and admitted to bail until his trial began on June 6, 1960; that during respondent's absence from this state the sheriff had general knowledge of his whereabouts but made no effort to communicate with him.

Respondent contends that he was never informed that an indictment was pending against him and therefore had no opportunity to demand a "speedy trial." We must first consider what is the responsibility of the authorities in such a case as this.

R. S., Chap. 148, Sec. 7 states in part: "No * * * officer of the court, unless by order of the court, shall disclose that an indictment for felony has been found against any person not in custody or under recognizance until he is arrested, except by issuing process for his arrest; * * *." The statute was an effective bar to any disclosure that an indictment was pending.

The respondent relies heavily on *Couture, Applt.* v. *State of Maine,* 156 Me. 231. We think the rule adopted in that case must be rather closely limited to such a situation as

there existed. In *Couture* the prisoner was in custody and was in the process of serving a sentence imposed for another offense. The effect of his incarceration by the sovereign was to sever his ordinary means of communication, to make him utterly dependent upon officials charged with his prosecution, and to render it impossible for him to ascertain by any of the usual methods the existence of a pending indictment. Upon these facts we held that "there was a duty on the part of officials to inform the respondent that an indictment was pending against him." In *Couture* the statutory requirement of secrecy had no application.

Respondent Hale was a fugitive from justice. He knew the nature of the crime he had committed and he knew the nature of the formal charge which would have been made against him had he not fled the state. By the terms of the quoted statute he was not entitled to know of the existence of an indictment until he had been arrested. He received a "speedy trial" after his arrest. He was not entitled to a speedy arrest or extradition while he was a fugitive.

"To constitute one a fugitive from justice, as administered in a given state, two things are essential, to wit: (1) that he, having been in that state, has left it and is within the jurisdiction of another; and (2) that he incurred guilt before he left the former state and while he was bodily present in that state." *Taft* v. *Lord* (1918), 92 Conn. 539, 103 A. 644, 645. It has been quite uniformly held that a fugitive from justice cannot treat the time during which he is absent from the state as a period during which he is denied a speedy trial. *State* v. *Swain* (1934), 147 Or. 207, 31 P. (2nd) 745; *Shepherd* v. *U. S.* (1947), 163 F. (2nd) 974.

Art. I, Sec. 6 of the Constitution of Maine provides in part for the right of one accused of crime to have "a speedy, public and impartial trial * * * by a jury of the vicinity." This provision has been implemented by statute in R. S., Chap. 148, Sec. 9, the applicable portions of which state:

"Any person imprisoned under indictment shall be tried or bailed at the next term after the finding thereof, *if he demands it,* * * * ; and all persons under indictment for felony, *if they have been arrested thereon,* shall be tried or bailed at the 2nd term after the finding thereof. Any person indicted, although he has not been arrested, is entitled to a speedy trial, *if he demands it in person* in open court." (Emphasis ours.)

The right to a speedy trial is a personal privilege which the respondent may waive. Delays caused by acts of the respondent himself constitute such a waiver. *State* v. *Slorah,* 118 Me. 203; *State* v. *Boynton,* 143 Me. 313; *Couture, Applt.* v. *State of Maine, supra.* We now hold that the delay which occurred while this respondent was a fugitive from justice outside the state, even though he had no knowledge of the pendency of an indictment, was the result of his own acts and constituted a waiver of his right to trial during that period. In the instant case the respondent was tried within a relatively short time after he was apprehended in another state and returned to Belfast. He received a "speedy trial" within the meaning of the Constitution of Maine and the quoted statute.

> *Motion for new trial addressed to Law Court dismissed. Exceptions overruled. Judgment for the State.*