**STATE of Maine**

v.

**Gerard C. CASTONGUAY.**

Supreme Judicial Court of Maine.

April 24, 1968.

Hubert Ryan, County Atty., Farmington, Daniel G. Lilley and Richard S. Cohen, Asst. Attys. Gen., Augusta, for plaintiff.

Edward J. Ridge, and Roland A. Wallace, Portland, for defendant.

Before WILLIAMSON, C. J., and TAPLEY, MARDEN and WEATHER-BEE, JJ.

WILLIAMSON, Chief Justice.

The defendant was convicted of the robbery of the Wilton branch of the Depositors Trust Company in the Franklin Superior Court by a Justice sitting in a jury waived session. The issues are whether the defendant was deprived of certain constitutional rights and whether testimony was erroneously admitted into evidence. The defendant's appeal is sustained. 17 M.R.S.A. § 3401.

The following facts are substantiated by the record:

On April 15, 1965 the bank was "held up" by a masked man who at the point of a loaded revolver compelled bank employees to deliver money to him. On April 21, 1965 the defendant was arrested by agents of the Federal Bureau of Investigation, and on the same day he was arraigned before the United States Commissioner for alleged violation of the federal statute relating to robbery of the Depositors Trust Company, a member of the Federal Reserve System and of which the deposits were insured by the Federal Deposit Insurance Corporation. 18 U.S.C.A. § 2113(a).

On April 22 or 23, a detective, who was a member of the State Police, told the defendant, "that the State charges would be pressed against him." On the 24th, the detective obtained a warrant for the arrest of the defendant on a charge of robbery under State law, and on the same day he delivered a copy of the warrant as a "detainer" to the Cumberland County jail where the defendant was then held by the Federal authorities.

On May 14, 1965 the defendant pleaded guilty in the United States District Court to an information charging robbery of the bank. On June 16, 1965 he was sentenced to imprisonment for three years with six months to be served in a Federal penitentiary and two and one-half years suspended.

No further action was taken by the State against the defendant from the delivery of the warrant as a "detainer" until the return of the indictment. The State knew that the defendant during this period was serving a sentence in the Federal penitentiary.

The defendant was indicted for robbery by the grand jury at the October 1965 term of the Franklin Superior Court. At the next term, the February 1966 term, the

defendant was tried, convicted, and sentenced to three and one-half to ten years in State prison.

The defendant thus has pleaded guilty to robbery under the Federal Statute; has served his Federal sentence in the penitentiary; and has since been found guilty on trial for robbery under the State statute. Without question, the State and the Federal prosecutions arose from identical facts. We have then two crimes; the one under Federal law and the other under State law; two convictions and two sentences. We turn to the claims of error:

*First.* The defendant contends that he was placed in jeopardy twice by trial in the State Court. The Fifth Amendment to the Federal Constitution provides, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." Our Maine Constitution is identical in effect: "No person, for the same offence, shall be twice put in jeopardy of life or limb." Article I, Section 8.

The Fifth Amendment through the due process clause of the Fourteenth Amendment does not prohibit State prosecution following Federal prosecution for a crime based on the same facts. The Federal constitutional law is well established that acts which constitute a crime under Federal law may also constitute a crime under State law, and vice versa. In short, each sovereignty may constitutionally insist that given acts are criminal under its own laws. The principles are fully discussed in Bartkus v. People of State of Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). *Bartkus* so far as we are aware, states the controlling law under the Federal Constitution.

We are asked, however, passing *Bartkus,* to determine that the Constitution of Maine prohibits successive Federal-State trials. The argument, vigorously asserted in the brief prepared by our late Brother Casper Tevanian, is that, in this case of first impression in Maine, we adopt the reasoning and conclusion of the dissenting opinion of Mr. Justice Black in *Bartkus.* Without

question, we have the power to construe our Constitution differently from the construction placed upon the Federal Constitution by the Supreme Court. It would violate no Federal constitutional law should we hold that Maine could not under the Maine Constitution prosecute the defendant for robbery under State law after trial in the Federal Court for robbery under Federal law. Our decision would in no way affect or bind the Federal Courts or the Federal Government in a prosecution after the State. We read nothing, however, in our Constitution that requires or should require us to reach a conclusion different from that of the Supreme Court in *Bartkus.*

Is it within the bounds of governmental fair play and equal justice that the defendant should be punished by the Federal Government and again by the State for the identical robbery? That the bank was a member of the Federal Reserve System with deposits insured by the Federal Deposit Insurance Corporation in no way altered the facts of the crime.

The crime was heinous. Persons in the bank were placed in fear of bodily harm and indeed of death by the armed robber. The seriousness of the crime would not, however, be a proper ground for bending established principles of law. The double jeopardy issue must be determined without reference to the character of the crime.

Without doubt, State prosecuting officers may properly determine that trial in the Federal Court satisfies needs of the State. Likewise, Federal officials may be content with a State prosecution. Here, as with the seriousness of the crime, we must not be led to a conclusion unsound in law. The policies of the prosecuting officers in determining whether to prosecute do not thereby become the standards of law which we are under duty to apply.

There is, in our view, no requirement of double jeopardy, of due process, or of fundamental fairness that the prosecution by

one sovereign of given criminal acts satisfies, as a matter of law, the legitimate needs of the second sovereign. Two crimes have been committed—State and Federal. A race by the authorities of State and Nation to prosecute X for a crime, thus barring the loser from later prosecution, would be unseemly in our Federal system.

█ We conclude, therefore, that neither the Federal nor the State Constitution prohibited the trial of the defendant in the State. Public policy, taken apart from strict constitutional principles, would not be served by the prohibition of the second State prosecution under our supervisory control of the State Courts.

*Second and Third.* The defendant charges error in that he was denied a speedy trial and that he was not taken before a magistrate in the State within a reasonable time. For these reasons he appeals from the refusal to dismiss three indictments on defendant's motion. The defendant was found guilty of robbery on one indictment; the other indictments have disappeared from the case.

For convenience we discuss the points together.

The constitutional guarantees are:

Federal: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. * * *" 6th Amendment.

State: "In all criminal prosecutions, the accused shall have a right * * * to have a speedy, public and impartial trial, * * *" Article I, Sec. 6.

█ The defendant has failed to substantiate his claims of error. From the issuance of the State warrant of arrest until the indictments were returned, it appears that the defendant was in the custody of the Federal Government. He cannot well say that he was harmed by the State in not acting under the warrant during the period of detention for the Federal crime.

In State v. Couture, 156 Me. 231; 163 A.2d 646 (1960), relied upon by the defendant, the Court had under consideration not, as here, the time from issuance of warrant until indictment or trial, but the time from indictment to arrest. *Couture* was not arrested for nearly eight months after the indictment was returned, during which period he was unaware of the indictment. The Court held that his constitutional right to a speedy trial had been violated.

In the case at bar there is no indication of a demand for trial at the October 1965 Term. The case remained on the docket and was heard at the next term in February, four months from the return of the indictments.

In 1966 the Supreme Court stated the principles in United States v. Ewell, 383 U.S. 116; 86 S.Ct. 773, 776, 15 L.Ed.2d 627:

"We cannot agree that the passage of 19 months between the original arrests and the hearings on the later indictments itself demonstrates a violation of the Sixth Amendment's guarantee of a speedy trial. This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950. 'Whether

delay in completing a prosecution * * * amounts to an unconstitutional deprivation of rights depends upon the circumstances. * * * The delay must not be 'purposeful or oppressive,' Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed.2d 393. 'The essential ingredient is orderly expedition and not mere speed.' Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041."

See also State v. Hale, 157 Me. 361, 172 A.2d 631 (1961); 15 M.R.S.A. Sec. 1201, implementing the Maine Constitution; Rule 48(b) M.R.Crim.P.; Glassman, Maine Practice, Sec. 48.2.

In our view the defendant has no cause whatsoever to complain that he was not brought before the District Court on the warrant of April 24, or that he was not tried until the first term following the indictment. We find no delay by the State in the course of the prosecution. Surely the State could not have been expected to have sought an indictment at the May 1965 Term when the Federal case was not yet disposed of. The defendant lost nothing by not being arrested by the State on the warrant, or in the relatively short delay from indictment in October until trial at the February Term.

"An officer making an arrest under a warrant issued upon complaint shall take the arrested person without unnecessary delay before a magistrate as commanded in the warrant;" Rule 5(a) M.R.Crim.P. The Rule, effective December 1, 1965, states a principle long familiar to all. In the case at bar the record does not establish that the defendant at any time was arrested under the warrant. Cases relating to the period between arrest and production of the accused before a magistrate cited by the defendant are therefore not applicable. See for example, Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), confession—"without unnecessary delay"; Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758 12 L.Ed. 2d 1020 (1964), (denial assistance of counsel); Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602 16 L.Ed.2d 694 (1966), (necessity of warning).

The motion to dismiss the indictments was properly denied. The defendant takes nothing from his first three points of appeal.

*Fourth:* The claim of error in the admission of the evidence of witnesses Manter and Gray remains for consideration. Before trial the defendant moved to suppress their evidence, and then went to trial with the agreement of the State and Court that their evidence should be admitted de bene. The Justice denied the motion to strike the evidence from the record.

The motions, the one to suppress and the other to strike, raised identical issues. Both motions were designed to keep the evidence from consideration by the fact finder.

The defendant contends that he was forced in the Federal Court to disclose information incriminating him in the State case. The State, the argument runs, used the "fruit of the poisonous tree." thus violating the constitutional rights of the defendant.

The defendant, represented by counsel, pleaded guilty before the United States District Court Judge and appeared before him for sentence. The Judge sought disclosure of the location of $6,500 of the monies admittedly stolen by the defendant from the bank. On refusal of the defendant to give the information, the Judge made it plain to the defendant and his counsel that without such disclosure the sentence he had under consideration would be reconsidered.

The defendant with his counsel withdrew and shortly gave the desired information to the Court, naming Manter and Gray. Their names were then passed by Federal authorities to the State authorities.

The Justice in the State case found that the defendant in making the disclosure

acted on advice of counsel and therefore by inference waived the Fifth Amendment with reference to a possible State prosecution. We are not satisfied that the record benefits the State to this extent. In our view the compulsion to disclose was not removed or softened by advice of counsel, whatever it may have been. The inducement to disclose remained alive. In short, the defendant did not waive any right under the Fifth Amendment to refuse to answer the questions put by the Federal Judge at the time of sentencing on the ground of self-incrimination in a State Court prosecution.

At the State trial Manter and Gray were witnesses for the prosecution. We are fully satisfied that their evidence was material and was prejudicial to the defendant. If the evidence was improperly admitted, it follows that the defendant is entitled to a new trial.

The question comes to this: Did the conditions under which the defendant made the disclosure leading to Manter and Gray, make their evidence inadmissible in the State trial? It is apparent that there was not the slightest error on the part of the Federal Judge in his examination of the convicted felon Castonguay, or in his extraction of information from him.

The disclosure upon which the Court insisted was without question an appropriate factor in the sentencing process. The Court sought recovery of the money; and cooperation with the Court would understandingly benefit the defendant. The Federal Judge, we emphasize, had no reason whatsoever to be interested in the possibility of a later State prosecution arising from the identical facts of the Federal crime.

From the point of view of the State prosecution the disclosures in the sentencing process in the Federal Court take on a different color. The choice before the defendant lay between a lighter sentence with disclosure and a heavier sentence with no disclosure. We may fairly say that the expectation of benefits to come overcame the defendant's reluctance to disclose the information.

■ No violation whatsoever of the defendant's constitutional rights under the Fifth Amendment in the Federal case was involved in the sentencing. The defendant could not plead self-incrimination with reference to a Federal crime to which he had already pleaded guilty. State ex rel. Jones v. Tahash, Minn. 149 N.W.2d 270 (1967); United States v. Gernie, CA 2, 252 F.2d 664 (1957).

■ If, however, a confession or admission had been obtained by law enforcement officers on the understanding for a lighter sentence implicit between the Court and the defendant, such evidence, with its fruits, would not have been admissible at trial. Michaud v. State, 161 Me. 517, 215 A.2d 87 (1965); State v. Priest, 117 Me. 223, 103 A. 359 (1918); State v. Grover, 96 Me. 363, 52 A. 757 (1902); Bram v. United States 168 U.S. 532 18 S.Ct. 183, 42 L.Ed. 568 (1897); Com. v. Knapp, 9 Pick. (26 Mass.) 496, 505 (1830); 29 Am. Jur. 2d Evidence §§ 559, 563; 23 C.J.S., Criminal Law § 817(2).

■ In the State prosecution the tests of admissibility must be applied by the State. Let us suppose an admission made under circumstances found to be proper in a Federal trial. The finding of the Federal Court would not make less essential the consideration of the admission with the surrounding circumstances in the State Court. A finding of "voluntary" in one Court, would not deny the right to find "involuntary" in the other Court.

In terms of a confession or admission, to which our case is analogous, the defendant was not a free agent in the Federal Court. In a very practical way he was compelled to give the desired information. In the State Court we cannot disregard the plainly observed factors which went into the disclosure and from which the trail led to the witnesses.

From the point of view of the State Court, we have for consideration information, not given for purposes of sentence, but drawn from the defendant under circumstances inconsistent with the Fifth Amendment.

■ If the fruits of the disclosure by the defendant may be used against him in the State Court we have a situation analogous to the discredited "silver platter" doctrine, "which allowed federal judicial use of evidence seized in violation of the Constitution by state agents." Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 1690, 6 L.Ed.2d 1081 (1961) commenting upon Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). The principle we apply differs in some respects; the analogy is not strictly apt. Evidence legally obtained under Federal law may not be used in a State Court if its procurement violated State or Federal constitutional prohibitions against such use.

For our purposes the State Constitutional protection against self-incrimination is the equivalent of the Fifth Amendment. Article I, Section 6, Maine Constitution. For convenience throughout the opinion, unless clearly noted otherwise, we discuss constitutional issues in terms of the Federal Constitution.

In Murphy v. N.Y. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1964), the Supreme Court, in upholding the right of a state-created authority to compel a witness to answer, stated the rule as follows:

"Applying the holding of [Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110, (1892)] to our holdings today that the privilege against self-incrimination protects a state witness against federal prosecution, supra, at 1608–1609, and that 'the same standards must determine whether [a witness'] silence in either a federal or state proceeding is justified,' Malloy v. Hogan, 378 U.S., at 11, 84 S.Ct., at 1495, 12 L.Ed.2d 653, we

hold the constitutional rule to be that a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by federal officials in connection with a criminal prosecution against him. We conclude, moreover that in order to implement this constitutional rule and accommodate the interests of the State and Federal Governments in investigating and prosecuting crime, the Federal Government must be prohibited from making any such use of compelled testimony and its fruits. This exclusionary rule, while permitting the States to secure information necessary for effective law enforcement, leaves the witness and the Federal Government in substantially the same position as if the witness had claimed his privilege in the absence of a state grant of immunity."

Our case comes within the principle stated above. In the Federal Court, the defendant was "compelled to give testimony" which might be incriminating under State law. The State may not use the compelled disclosure or its fruits.

The defendant in the course of the sentencing process in the Federal Court was entitled with reference to the State to hold a position at least equivalent to that he would have held on trial in the Federal Court. In our view, indeed, he was entitled to answer the inquiries of the Federal Judge safe from harm in the State Court as a result thereof. What the defendant there said, as we have seen, had no bearing on his guilt of the Federal crime.

■ No one would say that a guilty plea in the Federal Court made a State trial unnecessary, or that the right of the defendant to be considered innocent under State law until found guilty beyond a reasonable doubt had been stripped from him by the Federal plea.

■ An admission of guilt after conviction in the State Court made to the Justice in the course of sentencing understandably does not make good defects in trial. A defendant is not thereby found guilty. We must look at the trial to consider whether it was conducted free from error.

We here test the evidence stemming from the compelled disclosure of information at the sentencing before the Federal Judge under constitutional principles in the light of the State trial and of that alone. The fruits of an admission so compelled would have been inadmissible, and so too are the fruits of information drawn by inducement of shorter or longer sentence.

■ It is of the utmost importance to all that the constitutional principles in this and all other areas be maintained. Whether on a new trial the defendant will be found innocent or guilty is not of concern to us in applying the governing principles of law. The evidence under these tests was inadmissible. The appeal on this point must be sustained.

*Fifth:* A fifth point of appeal claiming error in the imposition of sentence in light of the Federal sentence was waived by counsel for the defendant at oral argument.

The defendant is entitled to a new trial. The entry will be

Appeal sustained.

WEBBER, J., did not sit.

DUFRESNE, J., sat at argument but did not participate in the decision.