STATE of Maine

v.

Barry BRANN.

STATE of Maine

v.

Gary STAPLES.

Supreme Judicial Court of Maine.

June 15, 1972.

Jonathan R. Luce, County Atty., Farmington, for plaintiff.

Calvin B. Sewall, Wilton, for Brann.

Noyes & Beal by Robert J. Beal, Rangeley, for Staples.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

On April 2, 1970 the Franklin County Grand Jury returned to the Superior Court a separate indictment against each of the two present defendants. Except for the identification of the defendant, the indictments were identically worded. They charged, in three counts, commission of the offense of robbery in violation of 17 M.R.S.A. § 3401.

On January 18, 1971 each defendant filed a motion for a dismissal of the indictment against him. The motion of defendant, Brann, identified itself as filed pursuant to Rule 48(b) M.R.Crim.P. and asked dismissal of the indictment because there had been "unnecessary delay" in bringing Brann to trial. The motion alleged that

(1) Brann had not been notified, and had not otherwise become aware until October 1970, of the pendency against him of the April 2, 1970 indictment; (2) commencing with February 1970, he had been under the custodial control of New Hampshire authorities, being

"confined by New Hampshire authorities first at a New Hampshire County Jail and thereafter at the New Hampshire State Prison at Concord, New Hampshire where he is now [as of January 18, 1971] serving a sentence imposed by a New Hampshire Court"

and (3) Maine law enforcement officers knew of his whereabouts at least from and after February 1970.[1]

The motion filed by the defendant, Staples, made no explicit reference to any criminal rule. It asserted, as one ground to support dismissal, that defendant, Staples, had been deprived "of a speedy trial as guaranteed by the state and federal constitutions" because of

"unnecessary delay in bringing Defendant [Staples] to trial, inasmuch as Defendant [Staples], who was indicted on this charge on April 2, 1970, and who requested prompt trial on or about May 13, 1970 in writing, has not until January 18, 1971 been brought to trial, although he has been available to the Court since February 1970."[2]

As a second ground of dismissal, the motion maintained that

"although on or about May 13, 1970, Defendant [Staples] in writing to the Franklin Clerk of Courts requested final disposition of the Indictment, over 180 days have now elapsed [as of January 18, 1971, the date of the motion] without the matter having been brought to trial, contrary to the intent of Title 34, Sections 1391 and 1392 of MRSA 1964."

---

1. On January 16, 1971 the defendants were returned to the State of Maine as the result of interstate rendition proceedings initiated by the State during December of 1970.

2. Staples had been incarcerated in New Hampshire under the same circumstances as had the defendant, Brann.

After an evidentiary hearing, in which defendant, Staples, stipulated a lack of actual prejudice and the defendant, Brann, left the issue open for proof but produced no evidence of actual prejudice, the presiding Justice denied each defendant's motion to dismiss.[3]

On January 20, 1970 each defendant was separately arraigned and each entered a plea of not guilty. Under Rule 13 M.R. Crim.P., the Court ordered a consolidated trial of the two indictments since they concerned a single underlying factual situation as to which the offenses and the defendants could have been joined in one indictment.

Prior to trial (but after arraignment) the State elected to proceed on only one, and the same, count of the three counts in each of the indictments. Trial before a jury commenced on January 20, 1971 and was concluded on the same day. The jury found each defendant guilty of robbery.[4]

On January 21, 1971 each defendant was sentenced and a separate judgment of conviction (including a commitment order) was entered. Each defendant has appealed to this Court from the judgment of conviction entered against him.

Both defendants have made the same statement of points on appeal—that the motion to dismiss filed by each should have been sustained because (1) there had been "unnecessary delay" in providing trial, dismissal being " . . . required by Maine Rules of Criminal Procedure, Rule 48(b)", and (2) there had been a

"violation by the State of . . . [each] Defendant's rights to receive a speedy trial as required by the constitution of Maine, Article I, Section 6."

■ Although the point on appeal which relates to an alleged violation of the constitutional guarantee of a speedy trial specifies only the Constitution of Maine, the decision of the Supreme Court of the United States in Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967) (by which the Federal Sixth Amendment guarantee of speedy trial became binding upon the States under the Federal Fourteenth Amendment) mandates that the law of the State of Maine may validly guarantee no less speedy trial protection than is federally afforded. We, therefore, treat the claim of the right to speedy trial under the Maine Constitution as including, automatically and at minimum, those benefits provided by the Federal Sixth Amendment guarantee of speedy trial.

■ Furthermore, we conclude that the designation as a point of appeal of a violation of the Rule 48, M.R.Crim.P. directive against "unnecessary delay in bringing a defendant to trial" provides, *in this appeal*, no opportunity for defendants to be afforded protections additional to those conferred by the constitutional (federal or state) rights to a speedy trial. While there might be circumstances in which the discretionary authority conferred by Rule 48(b) M.R.Crim.P. could be appropriately operative even though *constitutional* protections might be insufficient to require such dismissal, here the presiding Justice exercised his Rule 48(b) discretion by refusing to order a dismissal of the indict-

---

3. The presiding Justice treated Brann's motion to dismiss as if it had raised not only the "unnecessary delay" question under Rule 48(b) M.R.Crim.P. but also the issue of violation of the constitutional guarantee of speedy trial.

4. The docket entries reveal that after each defendant had been adjudged guilty and sentenced, the State moved that the other two counts in each of the indictments be dismissed. The motion was granted as to each defendant, and the Court ordered a final dismissal of the two counts in each indictment on which no trial had been held.

ments. Upon review, we should not consider this action by the presiding Justice an abuse of discretion requiring reversal were we to conclude that no violation of the constitutional directives as to speedy trial had occurred.[5]

Disposition of the present cases will be governed, therefore, by decision of the issue pertaining to the "speedy trial" guarantee contained in Article I, § 6 of the Constitution of Maine and the Federal Constitution's Sixth Amendment as it controls the State of Maine under the Fourteenth Amendment.

We consider, first, the speedy trial protections provided by the Federal Constitution since, as previously shown, these are the minimal protections which must be afforded the defendant.

By the decision of Smith v. Hooey, Judge, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed. 2d 607 (1969) as reaffirmed in Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L. Ed.2d 26 (1970) the State of Maine is under federal constitutional obligation to make a "diligent good-faith effort" to bring before the appropriate Maine Court for trial one who is incarcerated in another jurisdiction and has a criminal charge pending against him in Maine—at least if such defendant has made a demand for trial.[6]

In the present situation the defendant, Staples, had made a demand while he was incarcerated in New Hampshire. None was made, however, by the defendant, Brann.

Notwithstanding this factual difference in the two cases, we conclude that both cases may be decided without need to evaluate whether, under the doctrine of Smith v. Hooey, and Dickey v. Florida, a demand by the defendant is *always* essential to invoke the federal constitutional guarantee of speedy trial or whether it is unnecessary if the State which is seeking to prosecute knows that the defendant is being held incarcerated in another jurisdiction.

Such inquiry may be avoided because the present cases must be decided adversely to the defendants, and the relief sought by the defendants denied, on the ground that there is a lack of proof of actual prejudice to such interests of the defendants as are protected by the constitutional guarantee of speedy trial (federal or state).

In Dickey v. Florida, supra, the concurring opinion of Brennan, J., expressly directs attention to the role of prejudice in relation to the constitutional guarantee of speedy trial and the complexities generated by it. The opinion emphasizes that especially when the defendant is seeking a *dismissal* of the charges against him, rather

5. Defendant, Staples, had claimed in his motion to dismiss a contravention of the 180 day provision of 34 M.R.S.A. § 1391 which, under 34 M.R.S.A. § 1392, requires dismissal of the indictment.

  This contention, however, has been abandoned on appeal since it has not been specified as a point upon which reliance would be placed. Apparently, defendant, Staples, has recognized that since the language of 34 M.R.S.A. § 1391 refers only to one who "has entered upon a term of imprisonment in a penal or correctional institution *of this State*, [i. e., Maine]" (emphasis supplied); it is without application to him since he was imprisoned in New Hampshire at all times here claimed to be relevant.

6. Because of Smith v. Hooey and Dickey v. Florida we may not validly apply a general principle suggested in State v. Hale, 157 Me. 361, 172 A.2d 631 (1961), (unnecessary to the actual decision of that case) that one is a "fugitive from justice" if "(1) . . . he, having been in . . . [the] state [of Maine], has left it and is within the jurisdiction of another; and (2) . . . he incurred guilt before he left . . . [Maine] and while he was bodily present in . . . [Maine]" and is "not entitled to a speedy arrest or extradition while . . . a fugitive" and, further, "cannot treat the time during which he is absent from the state as a period during which he is denied a speedy trial." (p. 368, 172 A.2d p. 635)

than that he be afforded a trial without further delay:

"The *discharge* of a defendant for denial of a speedy trial is a drastic step, justifiable only when further proceedings against him would harm the interests protected by the Speedy Trial Clause." (p. 52, 90 S.Ct. p. 1576) (emphasis supplied)

For this reason, the opinion makes the further observation:

"Thus it is unlikely that a prosecution *must be ended simply because the government has delayed unnecessarily*, without the agreement of the accused." (p. 52, 90 S.Ct. p. 1576) (emphasis supplied)

Having acknowledged this much, the concurring opinion of Justice Brennan in *Dickey* further recognizes that although

"*prejudice* seems to be an *essential element* of speedy-trial violations", (p. 53, 90 S.Ct. p. 1576) (emphasis supplied)

there are additional problems concerning appropriate allocations, either generally or in the light of special circumstances, of the ultimate burdens of proof and the burdens of coming forward with evidence.

Although first acknowledging that:

"When the Sixth Amendment right to speedy trial is at stake, it may be . . . realistic and necessary to *assume prejudice* once the accused shows that he was denied a rapid prosecution." (p. 55, 90 S.Ct. p. 1577) (emphasis supplied),

Justice Brennan additionally recognizes:

"The difficulty in such an approach, of course, lies in determining *how long* a prosecution must be delayed before *prejudice is assumed*. It is likely that *generalized standards* would have to be developed to indicate when during the course of a delay there arises a probability of substantial prejudice. *Until delay exceeds that point, the burden most probably would remain on the accused to show that he was actually harmed."* (p. 55, 90 S.Ct. p. 1577) (emphasis supplied)

Justice Brennan further indicates that, subject to cases diverging from the norm as suggested in the discussion in 20 Stan. L.Rev. at 499–500,

". . . one temporal standard could very likely govern most prosecutions, . . .." (p. 55, 90 S.Ct. p. 1578)

As to such a generalized "temporal standard", in Dickey v. Florida the Supreme Court of the United States was considering a delay of approximately *eight years* between issuance of an arrest warrant and lodging of a formal detainer and trial (accompanied, in addition, by repeated demands for, and denial of, trial)—a delay which was "exclusively for the convenience of the State." (p. 38, 90 S.Ct. p. 1569)

Yet, in *Dickey* the Court declined to say that the unnecessary and unreasonably prolonged delay of almost eight years (and although accompanied by persistent demands made by the defendant for trial) required that prejudice be held to exist per se, with the result that a dismissal of the proceedings against the defendant could be warranted *without some showing by the defendant of actual prejudice caused to him by the delay.*

Rather, the Court majority took pains, first, to explain that in Smith v. Hooey, the majority—deciding as to a delay of six years after indictment without trial—

"remanded the case to the state court without deciding whether the defendant, when available for trial in the state court, would be required to show prejudice arising from the delay" (p. 37, 90 S.Ct. p. 1568)

and, second, to emphasize that the record before the Court in *Dickey* contained

"abundant evidence of actual prejudice to petitioner in the death of two potential witnesses, unavailability of another,

and the loss of police records." (p. 38, 90 S.Ct. p. 1569)

It was because the record in *Dickey* already showed such actual prejudice to defendant, in the form of an impairment of defendant's defense, that the Supreme Court of the United States reversed the conviction of the defendant produced by the unnecessarily and unreasonably delayed trial and remanded with the directive that the Florida Court

"vacate the judgment appealed from and direct the dismissal of any proceedings arising out of the charges on which that judgment was based." (p. 38, 90 S.Ct. p. 1569, 26 L.Ed.2d 26)

It thus becomes clear to us from both Smith v. Hooey and Dickey v. Florida that in the present situation, in which the delay between the commencement of charges and trial is *less than nine months,* there is little rational possibility that the Supreme Court of the United States would hold such delay, taken strictly in terms of time duration and even if it were found to be an unnecessary delay exclusively the responsibility of the State, to be so unreasonably long as to require the reversal of the judgment of conviction entered in a trial already held and the dismissal of the charges and proceedings based thereon—all upon a record showing that although defendants had been given an evidentiary hearing, they failed to offer, at minimum, even an initial indication of some actual prejudice.

It has been argued to us, however, that regardless of the apparent attitude of the Supreme Court of the United States concerning the dictates of the Federal Sixth Amendment guarantee of speedy trial, the protection of the speedy trial clause of the Constitution of Maine, as judicially construed in State v. Couture, 156 Me. 231, 163 A.2d 646 (1960), is more liberally in favor of the defendants and is here controlling.

Defendants maintain that *Couture* is binding precedent for the proposition that

a time delay between indictment and trial of approximately *eight months,* which is exclusively the responsibility of the State and is without justifying explanation, is an unnecessary delay and is so unreasonably long that actual prejudice is held conclusively presumed; and, therefore, a contravention of a defendant's right to a speedy trial, as guaranteed by the Constitution of Maine is, ipso facto, established because actual prejudice has ceased to be a factor in the evaluation.

In the instant situation the defendant, Staples, is forced to rely upon such interpretation of *Couture,* if he is to prevail, since he had stipulated in the evidentiary hearing before the presiding Justice that the delay had caused him no actual prejudice. He had thus provided the *proof* (by such stipulation) of an *absence* of actual prejudice; and this proof would defeat him if actual prejudice is a factor essential to an ultimate conclusion that a violation of the constitutional right to speedy trial has occurred, even if the ultimate burden of proof to negate actual prejudice be upon the State.

Such interpretation of *Couture*—that actual prejudice exists per se when the State is exclusively responsible for an unnecessary delay of eight months between indictment and trial—would seem to stretch considerably the reasonable import of the language used in *Couture.* The Court said only that an eight months delay

"*might well be* prejudicial to a person charged with crime, because during the interval . . ., witnesses essential to his defense *might* have died or become otherwise unavailable." (pp. 247, 248, 163 A.2d p. 657) (emphasis supplied)

This is language which speaks only of a *potential* of prejudice. It fails to signify that proof of actual prejudice becomes an irrelevant consideration because actual prejudice will be held to exist per se, as conclusively presumed.

There are other approaches to the conclusion in *Couture* that "the constitutional

rights of . . . [Couture] were violated." (p. 248, 163 A.2d p. 657)

One explanation could be that *Couture* recognizes that the defendant bears the ultimate burden of proof to establish actual prejudice caused by the delay but has the assistance in meeting this burden, of a rebuttable presumption of actual prejudice; and, therefore, if the State, as was true in *Couture* itself, fails to come forward with some evidence legally adequate to dissipate the effect of the rebuttal presumption, the conclusion will follow that defendant's constitutional right to a speedy trial has been violated.

Another explanation might be that the unnecessary delay attributable to the State of eight months was deemed sufficiently unreasonable, in terms of time, to place upon the State the ultimate burden of proof to establish an absence of actual prejudice, a burden which, in *Couture,* the State had failed to meet.[7]

Although the defendant, Staples (because of his stipulation of a lack of prejudice) could not, in any event, here prevail if any of the foregoing interpretations of *Couture,* as alternatives to a per se prejudice approach, were adopted, the defendant, Brann, who had made no stipulation and who had left the matter of actual prejudice open for proof, could be successful. As to him, the record before us fails to indicate an absence of actual prejudice either to dissipate the effect of a rebuttable presumption of prejudice or to meet an ultimate burden of proof by the State to establish a lack of actual prejudice to the defendant.

We believe, however, that a decision of the instant cases can be correctly reached without differentiating between defendant,

Brann, and defendant, Staples, in terms of the need for proof of the presence, or absence, of actual prejudice and regardless of any interpretation which it might be thought appropriate to assign to the language of *Couture.*

■ The reason is that the discussion concerning our State constitutional guarantee of speedy trial as presented in *Couture* must, in the final analysis, be recognized as dictum only and, therefore, without the controlling effect of binding precedent.

In making this point, we have in mind, specifically, those aspects of the statements in *Couture* which purport to deal with (1) the significance as reasonable or unreasonable of the time of delay there involved considered strictly in terms of lapse of time; (2) whether, and under what circumstances, actual prejudice must, or may be, held to be an essential element to be evaluated before a conclusion can be reached that there has been a violation of the constitutional guarantee of speedy trial; (3) whether, and under what circumstances, actual prejudice will be held to exist per se (and thus be eliminated as a factor for proof,) or will be required to be proved—especially if the remedy to be afforded is a dismissal of proceedings and the discharge of the defendant rather than an order requiring termination of further delay and immediate trial; and (4) insofar as actual prejudice is a matter of proof, the allocation of the ultimate burdens of proof and the burdens of coming forward with evidence.

The ultimate disposition made by the Court in *Couture* was the adjudication that "respondent is entitled to a new trial." This was the only result reached by the Court even though the defendant had filed

---

7. For the various possibilities which more recent scholarship has elucidated concerning the role of prejudice and the approach to it in terms of ultimate burdens of proof and responsibility to come forward with evidence, see, Dickey v. Florida, including concurring opinion of Brennan, J.; Smith v. Hooey, 393 U.S. 374, 384, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969)— separate opinion of Harlan, J.; Commonwealth v. Clark, 443 Pa. 318, 279 A.2d 41 (1971) (opinion for the Court by Roberts, J.) ; Note, The Right to a Speedy Trial, 20 Stan.L.Rev. 476 (1968) ; Note, The Lagging Right to a Speedy Trial, 51 Va.L.Rev. 1587 (1965).

a motion to quash the indictment. Moreover, the Court acknowledged that the motion to quash was

> "adequate to reach the violations of constitutional rights claimed" (p. 245, 163 A.2d p. 656)

not only at the trial level but also at the appellate level since a motion to quash, predicated on the violation of a defendant's constitutional right to a speedy trial, would be regarded as an exception to the general rule that a motion to quash is addressed to the discretion of the Court and is not open for appellate review "unless abuse of authority is shown." (p. 236, 163 A.2d p. 651)

In addition, the contention of the defendant that the indictment be quashed was recognized by the Court in *Couture* as a remedy which is proper for a violation of defendant's constitutional right to a speedy trial. As the Court said:

> "a person accused of crime is entitled to a discharge or dismissal, if his right to a speedy trial is violated." (p. 244, 163 A.2d p. 655)

Against this background in *Couture*—in which defendant had sought and was said to be entitled to a dismissal of the charges against him and yet the Court, even though acknowledging the correctness of his claim, afforded only the remedy of *granting a new trial*—it becomes critical that we advert to the fact that *Couture* came to the Law Court in 1960. This was five years prior to the effective date of our present Rules of Criminal Procedure and the establishment, under Rule 37 M.R.Crim.P., of a single comprehensive method—appeal from the judgment of conviction—as the procedure, of right, to invoke the jurisdiction of the Law Court to review errors of law

claimed at any stage of the proceedings below.[8]

Prior to 1965, the law of Maine had provided in criminal cases involving felonies two distinct methods, overlapping in some respects but generally not co-extensive, by which errors of law claimed during the course of the proceedings below could be asserted for direct review by the Law Court: (1) bill of exceptions and (2) appeal from the denial by the presiding Justice of a motion for new trial. State v. Hale, 157 Me. 361, 362, 172 A.2d 631 (1961).[9]

In *Couture* itself the review jurisdiction of the Law Court was invoked *solely* by the procedure of an *appeal from the denial of a motion for a new trial*. Although defendant, Couture, had preserved an exception to the denial of his motion to quash the indictment for violation of his constitutional right to a speedy trial, he had not prosecuted this exception before the Law Court by a bill of exceptions.

Under the review procedures adopted by the defendant, therefore, the review of the Law Court in *Couture* could produce, as a remedial disposition, *only* a mandate *granting a new trial* to the defendant. In particular, the Law Court was without authority to remand the proceedings with directions that the indictment be quashed, the proceedings against defendant dismissed and the defendant discharged—all of which the Court would have been empowered to direct had the issue of the correctness of the presiding Justice's denial of the defendant's motion to quash, asserted on the grounds of abrogation of defendant's constitutional right to a speedy trial, been presented to the Law Court by the prosecution of a bill of exceptions containing the exceptions to the presiding Justice's de-

---

8. "Report" in accordance with Rule 37A M.R.Crim.P., is not a standard procedure existing of right but is, fundamentally, a specialized option to accomplish review usually dependent upon agreements reached by the parties.

9. The review available by writ of error was in a collateral proceeding. See: R. S.1954, Chapter 129 §§ 11, 12; Dwyer v. State of Maine, 151 Me. 382, 390, 391, 120 A.2d 276 (1956).

cision on the motion to quash.[10] State v. Beaudette, 122 Me. 44, 118 A. 719 (1922); State v. Shannon, 136 Me. 127, 3 A.2d 899 (1939); and State v. Hume, 145 Me. 5, 70 A.2d 543 (1950).

This remedial restriction remained even though the Court in *Couture*, had extended itself to reach the issue of the abrogation of defendant's constitutional right to a speedy trial

> " . . . because . . . *grave injustice* may result unless these . . . questions are examined . . .." (156 Me. p. 237, 163 A.2d 646, 651) (emphasis supplied)

The "manifest injustice" technique, pursuant to the doctrine of State v. Wright, 128 Me. 404, 148 A. 141 (1929) as reaffirmed in State v. Hudon, 142 Me. 337, 52 A.2d 520 (1947), could be utilized under the criminal appellate practice in 1960 only within the procedural framework of an appeal from a denial of a motion for a new trial. Hence, even to prevent "grave injustice" to defendant, and within the procedural limitations which were generally controlling as well as specifically operative in *Couture,* the Law Court remained without authority to provide a remedy other than the granting of a new trial.

The foregoing discussion crystallizes the salient feature of *Couture* that the constitutional issue of a denial of speedy trial was discussed in a context in which a conclusion sustaining defendant's contention that he had been denied his constitutional right to speedy trial could be accompanied by a remedial disposition necessarily ineffective to avert the very injustice which the Court, by affording its review, was seeking to prevent.

As we have previously observed, the Court's discussion in *Couture* purported to recognize the validity of the contention of the defendant—that the indictment should be dismissed and defendant adjudicated free of obligation to stand trial,—on the basis that the delay had been sufficiently long to create, if not a conclusive presumption, of actual prejudice either (1) a rebuttable presumption of actual prejudice which the State had failed to dissipate, or (2) an involvement with actual prejudice to defendant so strong that the ultimate burden is placed upon the State to establish the absence of such prejudice to defendant.

Yet, notwithstanding such foundational approach in terms of an actual prejudice to defendant (in the form of an impairment of his ability to defend himself at trial), the Court in *Couture* could provide no remedy other than to order precisely that *tainted* trial which the constitutional guarantee of speedy trial prohibits—the taint existing because the Court predicated its conclusions, for probative purposes, on the presupposition, probatively unremoved, that the defendant's side of a trial had been unfairly injured by the State's delay.

Thus, instead of being necessary to the disposition which the Court could, and did, make in *Couture,* the "constitutional speedy trial" discussion was really unsupportive of, and incongruous with, the remedy legally possible to be, and actually, prescribed by the Court.

If it was the purpose of the Court in *Couture* to expose the violation of the defendant's constitutional right to a speedy trial in order to send a message to the prosecutor—informing him of the injustice which he would be perpetrating were he to proceed with the new trial which the Court was ordering—such technique is dictum incarnate. The nature of the discussion *as dictum* remains unaltered by the worthiness of the motive which prompted it.

10. As already mentioned, in *Couture* the Law Court recognized that the issue thus presented would have been properly open for review as error of law raised by a bill of exceptions and notwithstanding the general rule that a decision on a motion to quash was ordinarily deemed to lie within the discretion of the presiding Justice and reviewable only for abuse of discretion.

That the constitutional speedy trial exposition in *Couture* is thus dictum, rather than actual decision, is further corroborated by the point that the remedy procedurally possible and actually afforded by the Court—the granting of a new trial to the defendant—was within the strict decisional function of the Court as to another issue which was appropriately reached under an appeal from the denial of a motion for a new trial and as to which the granting of a new trial, to prevent manifest injustice, was an effectively dispositive remedy.

This issue concerned the serious trial error of the presiding Justice in allocating to the jury a question of law which lay within the exclusive prerogative of the Court to decide and which pertained to an essential element of the crime of "Escape" involved in *Couture*—i. e., the "reasonableness of the detention" of Couture at the Alfred County Jail from which Couture was charged to have "escaped'—a detention imposed before Couture was taken to the Men's Reformatory to commence serving a sentence which had been imposed upon him.[11]

It was the view of the Law Court in *Couture* that this procedure produced manifest error requiring a new trial. As the Law Court said:

"In view of the fact that the issue of the reasonableness of the detention is a matter of law for the court, this instruction was erroneous. As a result of the procedure adopted, authority was actually given to the jury to determine when the sentence . . . to the Reformatory was to start. This is a prerogative not vested in a jury. We are of the opinion that the propounding of this question was prejudicial to the respondent." (156 Me. p. 244, 163 A.2d p. 655)

It is clear, therefore, that the Court's holding on this issue is the actual decision of *Couture* which is to be regarded as the controlling precedent under stare decisis. It was an issue which the Court had authority to reach under its review jurisdiction to prevent manifest injustice, and the procedure allowed a remedy which was effective to avert precisely the injustice which the Court was seeking to forestall.[12]

This elucidation of the actual decision in *Couture* confirms the *dictum* nature of the exposition as to the violation of defendant's constitutional right to a speedy trial.[13] We approach decision of the present cases, therefore, on the basis that the issues now before us remain open, notwithstanding the discussion offered in *Couture*, for freshly independent consideration and decision in light of the totality of information presently available and the indications of the approaches which are likely to be followed in the immediate future—all suggested by the more probing and thorough attention afforded, and the more recent insights developed, by the scholarship con-

---

11. On the question of whether a finding that the detention was *unreasonable* could have provided a legal justification for an "escape", attention is directed to the more recent cases of Hamner v. State, Me., 223 A.2d 532 (1966); Beaulieu v. State, 161 Me. 248, 211 A.2d 290 (1965); Chapman v. State, Me., 250 A.2d 696 (1969); Collins v. State, Me., 262 A.2d 443 (1970) and Fuller v. State, Me., 282 A.2d 848 (1971).

12. Although *Couture* thus holds that the *reasonableness* of the length of the detention at the County jail after a sentence to the Reformatory has been imposed is an issue of law, neither *Couture* nor the analysis offered in this opinion is to be interpreted as removing from the province of the jury the determination of any subsidiary issues of fact required to be resolved, preliminarily, to provide an underlying basis on which the ultimate judgment of the "reasonableness of the jail detention" will be made by the presiding Justice.

13. Insofar as we now adjudicate that the *Couture* conclusion of a violation of the State constitutional guarantee of speedy trial is dictum and not a decision, we qualify the statement in State v. Castonguay, Me., 240 A.2d 747 (1968) that the Court had so "held" (p. 750) in *Couture*.

centrated (subsequently to 1960) on the complexities of the problems presented by the constitutional guarantee of speedy trial.

In the present cases we confront, strictly in terms of a lapse of time, a delay between indictment and trial of no more than nine months. We may assume, arguendo, that (1) this delay was exclusively the responsibility of the State—no conduct of the defendant being a contributing factor; (2) the delay was "unnecessary" insofar as it could reasonably have been shortened by at least five months had the State undertaken a "diligent, good faith effort", by initiating rendition proceedings shortly after return of the indictments on April 2, 1970, to bring defendants from New Hampshire to Maine—the appropriate Maine authorities having been aware since February of 1970 that defendants were incarcerated in New Hampshire; (3) as a general proposition, strictly in terms of length of time and independently of any special circumstances, a delay of nine months between indictment and trial—exclusively the fault of the State and without a valid explanation reason for it—may be said to be "unreasonable", at least in the sense that it might be thought to be too long a time to be countenanced as generally sound prosecutorial practice.

In this posture, the issue for decision as raised by the constitutional guarantee of speedy trial (state or federal) becomes the significance of such hypothesized "unnecessary" and "unreasonable" delay of nine months between indictment and trial *in relation to the role of actual prejudice to the defendant,* measured by those interests which the speedy trial constitutional guarantee is designed to safeguard.[14]

It will suffice that we decide the instant cases by announcing a principle negative in its import. We conclude that a delay of nine months between indictment and trial (even if assumed to be "unnecessary" and exclusively the responsibility of the State) cannot be held to be so unreasonably long, absent (as here) special factors concerning the particular nature of the case or the circumstances surrounding the delay,[15] as to warrant a finding that there had been a denial of the constitutional right to speedy trial, requiring (1) the reversal of a judgment of conviction resulting from a trial already held and (2) a mandate to achieve a dismissal of the indictment and the discharge of the defendant—*all upon a record which fails, as here, affirmatively to demonstrate some actual prejudice caused to the defendant by the delay.*[16] See: United States ex rel. Solo-

14. In United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966) these interests were described as protection against "[1] . . . undue and oppressive incarceration prior to trial . . . [2] . . . anxiety and concern accompanying public accusation and . . . [3] impair[ment] [of] the ability of the accused to defend himself." (p. 120, 86 S.Ct. p. 776.

15. Such circumstances might be (illustratively) an actual purpose by the State deliberately to harm the defendant or otherwise to persecute or act oppressively towards him or to utilize the delay intentionally to gain advantage either at the expense of the defendant or for some other objective which the State is seeking to promote for its own exclusive benefit.

16. We are aware that in many jurisdictions there are rules of court or statutes

(or both) which may specify time limitations of less than nine months within which, after indictment, and in accordance with additionally specified factors, trial must be held or an indictment dismissed.

Such rules and statutes, in the respect that they prescribe a time interval beyond which a delay in affording trial is discountenanced, tend to promote a generalized public policy similar to that which is the concern of a constitutional guarantee of speedy trial—that criminal prosecution shall not be unduly delayed. It would be a mistake, however, to conclude from such resemblance in general objective that these court rules or statutes prescribe time measures, other elements or remedies which are to be taken as the concrete, particularized *operation* of the *constitutional* guarantee of speedy trial, *as such.*

mon v. Mancusi, 412 F.2d 88 (2d Cir. 1969); United States v. DeLeo, 422 F.2d 487 (1st Cir. 1970); and United States v. Alo, 439 F.2d 751 (2d Cir. 1971).

■ More specifically, we conclude that a time-lapse of no more than nine months between indictment and trial, under the circumstances as above postulated or described, is insufficient, in terms of the strictly temporal aspects, to yield either (1) a conclusive presumption of prejudice which, in effect, eliminates prejudice as a relevant matter of proof, or (2) a rebuttable presumption of prejudice to assist defendant in meeting the ultimate burden of proving that he sustained actual prejudice from the delay, or (3) a transfer of the ultimate burden of proof to the State to demonstrate a lack of actual prejudice to the defendant.

■ Each defendant in the present cases was, therefore, subject at least to an initial burden to come forward with some legally adequate evidence of actual prejudice caused to him by the nine months' delay before he could be in position to maintain that he had made a "prima facie" case either (1) to sustain an ultimate burden of proof reposing upon him to show actual prejudice, or (2) to effect a transfer of the ultimate burden of proof to the State to show an absence of actual prejudice to the defendant (see: separate opinion of Harlan, J., in Smith v. Hooey, supra, and Commonwealth v. Clark, 443 Pa. 318, 279 A.2d 41 (1971)).

Here, neither defendant has made such minimally requisite preliminary showing of actual prejudice. As previously mentioned, defendant, Staples, on the contrary, by a stipulation that he had sustained no actual prejudice, *proved*—thereby to allow the State to meet an ultimate burden of negating prejudice, if such were its burden—the lack of actual prejudice. The defendant, Brann, although avoiding a stipulation and leaving the issue of actual prejudice open for proof, failed to come forward with any preliminary showing of actual prejudice caused to him by the delay; and the total record remains silent on the issue since no evidence was produced by the State, advertently or inadvertently, which might be said to supply this deficiency in the evidence produced by defendant, Brann.

As to each defendant, therefore, the entry must be:

Appeal denied.

---

It is the nature of court rules and statutes that they can, and should, be, and usually are, promulgated and enacted to meet the exigencies of situations which are transient or of shorter, rather than longer, duration. Thus, they often represent policy responses to passing needs rather than being geared to the fundamental, foundational and enduring protections which a *constitution* is designed to preserve.

Further, court rules may be promulgated, and statutes enacted, frequently and with ease; they are as readily amended or repealed as changing circumstances might reveal that their appropriate functions require modification or termination. A *constitutional* mandate, however, such as a guarantee of speedy trial, because calculated to speak long range, is encased in a mold constructed to have relative permanence and to be resistant to frequent, or easily accomplished, amendment or repeal.

The provisions of rules of court or of statutes dealing with the avoidance of long prosecutorial delays may, therefore, at any given period of history, prescribe time limitations and other elements, as well as specify remedies, to protect interests and promote purposes, short-range, which, at a given time might be similar to, or different from, the foundational, rockbottom and long range concerns, objectives and remedial concepts crystallized into a *constitutional* guarantee of speedy trial. Cf. United States ex rel. Frizer v. McMann, 437 F.2d 1312 (2d Cir. 1971).

Hence, it would be a mistake were we to assume that these rules of court or statutes provide the controlling determinants of, or the materially significant guides to, the formulation of those principles which are embodied in a constitutional guarantee of speedy trial.